## J. J. DULANEY *v.* WILLIAM NUNNERY.

[Abstract Kentucky Law Reporter, Vol. 7—292, 304.]

**Assignment of Error in Court of Appeals.**

An assignment of error in this court that "the court erred in overruling appellant's motion to grant him a new trial on the grounds set out in the motion" is sufficient. Such an assignment calls in question all the grounds relied on in the motion for a new trial below.

**Instruction Based on Facts not Proved.**

An instruction is erroneous when based on a statement of facts not warranted by the evidence.

**Mortuary or Life-Tables as Evidence.**

In a suit for damages for malpractice against a surgeon, wherein it is alleged that the defendant failed to skillfully reduce dislocations of plaintiff's shoulder, and resulting in his loss of the use of his arm and hand, life or mortuary tables showing the average length of life are not admissible as evidence. The plaintiff's expectation of life could have nothing to do with estimating the damages he was entitled to recover.

APPEAL FROM KENTON CIRCUIT COURT.

October 29, 1885.

OPINION BY JUDGE PRYOR:

The appellee's arm and thumb having been dislocated, as is alleged, by a fall from a wagon, he applied to appellant, who is a surgeon, to have his shoulder and thumb reset, or in other words reduce the dislocations and treat his case as the injuries demanded. The appellee avers that the treatment was undertaken by the appellant; that he failed to reduce the dislocation and left his limbs in the same condition they were when first injured; that this was the result of the unskilful and negligent manner in which he was treated; and by reason of this carelessness on the part of the surgeon he lost the use of his arm and hand and is now permanently disabled. The issues made were as to the treatment of the surgeon, the latter insisting that he reduced the dislocations and treated the case as a skilful surgeon should have treated it, but that the appellee by his own negligence caused the injury of which he now complains.

Before considering the main questions involved in the case, it is proper to dispose of the questions of practice raised by counsel for the appellee. The verdict in this case was rendered on the 17th day of January, and counsel for the appellee says that no motion to set aside the judgment was made until after the 26th of that month. In this counsel is mistaken. On the same day the verdict was rendered a judgment seems also to have been entered, and on the same day the appellant by counsel filed grounds and moved for a new trial. No motion was made within two days after verdict, and while the trial court was not asked in express terms to set aside the judgment, the grounds for a new trial having been filed and a motion made to grant a new trial, this was in effect asking the court to set aside both the verdict and judgment.

There were six distinct grounds assigned for a new trial in the court below and five distinct errors assigned in this court. The first, second, third and fourth errors apply to the instructions, and the fifth error is: "the court erred in overruling appellant's motion to grant him a new trial on the grounds set out in the motion." One of the grounds for a new trial in the court below was that "the damages were excessive" and another that "the verdict was not sustained by the evidence," and again, "the court erred in permitting the plaintiff to read certain 'life tables' to the jury as evidence." These three grounds were not specified in the assignment of errors but were embraced, as appellant contends, in the fifth assignment of error—that the court erred in overruling appellant's motion for a new trial on the grounds set out in the motion. This was a sufficient assignment and called the attention of this court, as well as the appellee, to all the grounds filed with the motion for a new trial. In *Maxwell v. Dudley,* 13 Bush (Ky.) 403, the assignment was that the court erred in overruling the motion for a new trial. This was too general and indefinite, as held by this court; but the assignment of error in this case is as specific as if the assignment had been that the court erred in overruling the motion for a new trial on each and all the grounds assigned.

The assignment calls in question all the grounds relied on in the court below and should be inquired into as readily as if each ground for a new trial had been separately assigned for error in this court.

It is also insisted that the instructions in this case should not be considered, because it does not appear that all the instructions given

or offered or refused are embodied in the record as required by Civ. Code 1876, § 337, subsec. 2. The record as we find it excludes the idea that any other instructions were offered by either party, or had been given or refused by the court.

The record says, this being all the evidence, the plaintiff and defendant asked the court to instruct the jury as to the law of the case. The court gave instructions 5 and 6. Plaintiff then asked instructions, three in number and all designated. Defendant then asked instructions 1, 2, 3 and 4. Objections and exceptions were properly taken. So we have the instruction given by the court at the instance of both parties, instructions offered by the plaintiff, and instructions offered by the defendant, some given and some refused. It therefore affirmatively appears that certain instructions were given and certain instructions refused, and nothing else appearing it must be the legal inference that all the instructions offered, given and refused are embraced in this record. Before this court can say it does not appear that all the instructions are here, it must assume that the court below signed an imperfect bill; and, further, the declaration that the instructions were given by the court and certain other instructions asked by the plaintiff and defendant, all of which are found in the record, negatives the idea that the bill does not contain all the instructions. Such conclusions are not warranted by the record before us and therefore the instructions should be considered.

Instruction No. 5 given by the court is clearly erroneous because based on a statement of facts not warranted by the evidence. It appears from the entire proof in this record that the appellant is a surgeon of high standing in his profession, an educated physician. The only issue presented by the pleadings is that the appellant by his negligence in his treatment of the appellee caused the injury; that "a surgon uneducated, ignorant and unfitted should not blindly and recklessly perform a surgical operation," all of which is good law but entirely foreign to the subject-matter of this controversy and calculated to impress the jury with the belief that the ignorance and want of capacity as a surgeon contributed to produce the wrong complained of. Want of skill, ignorance and a lack of education in his profession is not a charge made against appellant, nor is there any proof sustaining, to any extent, such a view of the case, the entire charge resting upon the neglect of the surgeon toward his patient. The suggestion, therefore, coming from the court upon questions

not pertinent to the issue was calculated to mislead the jury and we think must have prejudiced the substantial rights of the appellant. The jury had been advised or directed to inquire into a fact the nature of which had not been established by the proof, and their minds seem to have been directed to the consideration of this immaterial issue raised alone by the instructions throughout the entire case. While the issue then raised may have been immaterial in a legal sense, the jury might well have supposed that it embodied the views of the judge giving them, upon the testimony that as a jury they were called on to consider.

It is true the appellant may have been an educated and skilled surgeon and still have treated the patient in an unskilful manner. It is alleged that by his carelessness, negligence and unskilful manner of treatment he failed to readjust his shoulder. This is the issue: Was he negligent? Did the appellant treat the case in an unskilful manner? Did this negligence or mode of treatment cause the injury? If he did, he is liable in damages.

During the progress of the trial the plaintiff was permitted to read to the jury as evidence the "Life-tables," showing the expectation of life in England according to the Carlisle bill of mortality. These life-tables appear to differ in their results from the American tables; but, whether so or not, neither would have been competent in this case. Knowing the appellant was before the jury exhibiting the condition of his shoulder and thumb in the presence of skilled surgeons, who also examined the injured limbs, the plaintiff's expectation of his life had nothing to do in estimating the damages he was entitled to recover. If the limb had become useless, or so much injured as to lessen his capacity or ability to labor, and this resulted from the negligence or unskilfulness of the appellant in the treatment of his case, then it was with the jury to say how much damages he had sustained by reason of the injury. They need no life-table to show the expectation of life. His physical condition before and after the injury was made known to the jury and they required no expert or life-table to show the extent of the damages sustained, in the event the appellant was responsible. As the case must go back for a new trial it is not necessary or perhaps proper to discuss the testimony, and we can only say that the court should, on the motion of the appellant, have awarded a new trial. Judgment *reversed* and remanded for a new trial consistent with this opinion.

*Collins & Fenley, Pryor & Chambers, for appellant.*
*J. F. & C. H. Fisk, A. C. Ellis, for appellee.*